akerman

Brittany Buccellato
Special Counsel

Akerman LLP
1251 Avenue of the Americas
37th Floor
New York, NY 10020

T: 212 880 3800
F: 212 880 8965
brittany.buccellato@akerman.com

December 10, 2025

**VIA ECF**

Honorable Dale E. Ho
United States District Judge
Southern District of New York
40 Foley Square
New York, New York 10007

**Re: Hormigo v. Icahn School of Medicine at Mount Sinai, et al., 24 Civ. 04757 (DEH)**

Dear Judge Ho:

The parties submit this joint letter pursuant to the Order, dated December 5, 2025, in order to provide the information requested by the Court regarding Plaintiff's Third Request No. 8 (ECF No. 64). This Request seeks documents sufficient to show the dates on which Amy Chan, M.D., who according to Plaintiff is one of the much younger, less qualified physicians in Defendants' Neuro-Oncology Division, performed in-patient neuro-oncology consults outside of the weeks for which she was scheduled to be on-call or on in-patient service.

Defendant's Position: Consults are typically when a physician calls another physician. If another physician consulted with Dr. Chan when Dr. Chan was not on the schedule, that information may not be recorded anywhere. Dr. Chan would not record in a patient's chart the fact that another physician called her regarding a patient while she was not on the schedule. The other physician may, but not necessarily, write in their note that they spoke with Dr. Chan. In order to determine whether Dr. Chan appears in another physician's notes, Mount Sinai would have to: (1) determine when Dr. Chan was not scheduled to be on-call or in-patient; (2) determine which patients were seen in neuro-oncology on those dates (and, as described below, in an indeterminate number of other departments that could have called a neuro-oncologist); (3) pull the record for each patient seen on that date; (4) search for any mention of Dr. Chan; and (5), if Dr. Chan is mentioned as having provided a consult, redact all other information for that patient and produce the documents to Plaintiff. As explained in Mount Sinai's December 3 letter to the Court, Mount Sinai was unable to locate the schedules for 2017, 2018, and 2019.[1] Thus, there is no way to determine when Dr. Chan was not on schedule for the majority of her employment. In addition, approximately 12 to 20 patients are seen in neuro-oncology on an

[1] Dr. Chan was employed at Mount Sinai from approximately July 2017 to June 2020.

average day. Physicians may also have called Dr. Chan with regard to a patient not assigned to neuro-oncology (e.g., a patient in the Emergency Department or Oncology), in which case, it is impossible to determine the potential universe of patient notes to be reviewed. Finally, a patient's medical record for a single visit can be as long as 60 pages. Even if it were possible and proportionate to the needs of this case to locate this information, it would be of limited value to Plaintiff's claims. The fact that Dr. Chan answered her phone to respond to a physician's questions about a patient when she was not on schedule would not disprove that she was overworked because Plaintiff assigned her more work than she had promised her. Even if the records show that Dr. Chan accepted additional consults despite an already demanding workload, this only demonstrates her dedication to patient care. Such evidence does not advance Plaintiff's claims. Finally, the fact that Plaintiff assigned Dr. Chan more work than she had promised her was only one factor among many that led to the decisions regarding Plaintiff's employment.

Plaintiff's Position: At the outset, Plaintiff asked Defendants to meet and confer regarding electronic search capabilities and related issues for the requested documents in order to respond to the Court's questions, but Defendants refused.

It is Plaintiff's understanding that the information in question is available in electronic medical records in Defendants' EPIC system, that such records are searchable by provider and by time-period, that such records would reflect when Dr. Chan performed inpatient consultations by evaluating admitted or Emergency Department patients, and that such records would distinguish between the inpatient consultations performed by Dr. Chan, which are covered by Third Request No. 8, and outpatient visits, which are not covered by the request. Therefore, Defendants' assertion that it would be impossible to narrow down the information to be reviewed is incorrect. Indeed, Defendants' claim that "12 to 20 patients are seen in neuro-oncology on an average day" conflates outpatient visits with inpatient visits. That alleged statistic can only refer to outpatient visits, which are not covered by Third Request No. 8, and is irrelevant.

Contrary to Defendants' assertions that this information is "of limited value to Plaintiff's claims," evidence showing that Dr. Chan performed inpatient consultations on admitted patients outside of her assigned inpatient service weeks, which Plaintiff contends occurred, undercuts Defendants' defense that they terminated Plaintiff's employment because she assigned an "untenable" number of inpatient service weeks to Dr. Chan and is relevant to the issue of pretext. Defendants' inability to locate the inpatient service schedules for 2017, 2018, and 2019 is highly prejudicial to Plaintiff's ability to rebut Defendants' defense and should not shield Defendants from producing additional relevant documents regarding that defense. If Defendants cannot produce documents regarding the inpatient service schedules and the inpatient consultations performed by Dr. Chan outside of her inpatient service weeks, then Defendants should not be permitted to rely on their defense that they terminated Plaintiff because she assigned an "untenable" number of inpatient service weeks.

Respectfully submitted,

/s/ Brittany Buccellato

Brittany Buccellato

Respectfully submitted,

/s/ Amy Shulman

Amy Shulman